IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANTHONY WILSON and | * | |
| KIMBERLY WILSON, the parents | * | |
| of Martez Wilson, and the ESTATE | * | CIVIL ACTION FILE |
| OF MARTEZ WILSON, | * | NO. 1:17-cv-00634-ELR |
| | * | |
| Plaintiffs, | * | |
| | * | |
| V. | * | |
| | * | |
| CITY OF DOUGLASVILLE, GA, | * | |
| OFFICER COYLEE DANLEY, et | * | |
| al., | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BRYAN PORTERFIELD AND SEAN FLACK'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. KRIS SPERRY**

COME NOW defendants Bryan Porterfield and Sean Flack (collectively referred to herein as "these defendants") and, pursuant to Local Rule 7.1, submit this memorandum of law in support of their motion to exclude the opinions of plaintiffs' expert witness, Dr. Kris Sperry, showing the Court as follows:

## I.   INTRODUCTION

This Section 1983 case arises from the arrest and medical assessment of decedent Martez Wilson, who died from a rare medical event – cardiac arrest from metabolic abnormalities as a result of exercise collapse associated with sickle cell

trait ("ECAST").  In an effort to link the alleged omissions of these defendants to the death of Wilson, Dr. Sperry opines as follows: (1) the cause of Wilson's death resulted from exercise collapse associated with sickle cell trait;[1] (2) the initial treatment for a suspected ECAST event is primarily support through the administration of oxygen and the provision of fluids in order to prevent further damage and possible death;[2] (3) had Wilson been promptly supplied with oxygen and fluids at the site of his arrest by these defendants, it is more probable than not that he would have survived;[3] and (4) had Wilson been transported to a hospital, it is more probable than not that he would have survived.[4]

As addressed below, it is undisputed that the pathophysiology of ECAST remains poorly understood, and, given the rarity of occurrences and high-morality rates, there is no clinically-established treatment or "cure" for ECAST.  As such, Dr. Sperry concedes he is not qualified to opine about treatment for ECAST patients.[5]  Yet, he renders a survivability opinion based on purported peer-reviewed studies that do not exist.  Dr. Sperry's opinions are no more than *ipse dixit* conclusions of a forensic pathologist with no experience in the clinical

---

[1] Kris Sperry Depo., p. 139, l:4-10, attached as Exhibit A.
[2] *Id.*, p. 152, l:8-14.
[3] *Id.*, p. 160, l:5-25, p. 161, l:1-12.
[4] *Id.*, p. 180, l:10-25, p. 181, l:1-3.
[5] *Id.*, p. 32, l:9-10, p. 143, l:10-16, p. 25, l:10-16.

treatment of ECAST patients.  Without the benefit of Dr. Sperry's *ipse dixit* "causation" opinions, these defendants are entitled to summary judgment for the reasons set out in their motion for summary judgment.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Analytical Framework for Excluding Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.*[6] and its progeny make clear that district courts act as gatekeepers, excluding evidence unless is it reliable and relevant.  At all times the district court must still determine the reliability of the opinion, not merely the qualifications of the expert who offers it. *See Kumho Tire*, 526 U.S. at 149 ("We conclude that *Daubert*'s general principles apply to the expert matters described in Rule 702. The Rule, in respect to all such matters, establishes a standard of evidentiary

---

[6] 509 U.S. 579, 597 (1993).

reliability.")   Thus, the district court generally engages in a three-part inquiry derived from Rule 702 to determine the admissibility of expert testimony.   *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003).   First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue. *Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1988). *See also Cook v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005) (expert testimony cannot be admitted unless all of the criteria are met). The same standard applies to all expert testimony, including testimony regarding scientific, technical, and other specialized matters.   *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

For the reasons discussed below, Dr. Sperry's opinions fail to meet all three criteria for admissibility.

## B.   Dr. Sperry is Not Qualified to Testify Competently Regarding Treatment of ECAST

Rule 702 requires that an expert be "competent and qualified by knowledge, skill, experience, training, or education to render the opinion." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006) (internal quotation marks and citation

omitted); Fed. R. Evid. 702. *See also Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1351 (N.D. Ga. 2001) ("The expert must be qualified in his field of expertise."). Witnesses who lack sufficient relevant qualifications must be excluded as incompetent. *See Trumps v. Toastmaster, Inc.,* 969 F. Supp. 247, 252 (S.D.N.Y. 1997) (mechanical engineer not competent to provide opinions on issue involving electrical engineering); *Everett v. Georgia-Pacific Corp.*, 949 F. Supp. 856, 857 (S.D. Ga. 1996) (physician not competent to testify on cause of plaintiff's medical condition because he practiced in area of family medicine and surgery and possessed no specialized knowledge or training in field of toxicology; expert must, at a minimum, possess some specialized knowledge about field in which he is to testify); *McLendon v. Ga. Kaolin Co.*, 841 F. Supp. 415, 417-19 (M.D. Ga. 1994) (witness not competent to testify about quantity, quality, or value of kaolin, when he had taken only survey course in geology in college, had minimal work experience with kaolin evaluation, lacked knowledge of treating kaolin, did not know outer limits of uses of kaolin, and had no knowledge of royalties used in kaolin leases).

A witness may not qualify—through reading and preparation—as an expert in "an entirely different field or discipline." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (citation omitted). Instead, he

must "stay within the reasonable confines of his subject area." *Id.* "Thus, many courts have excluded testimony when they determine that the witness is testifying to an area outside of—but related to—[his] expertise." *Id.* (citing *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001)); *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997).

This is exactly the case here. Dr. Sperry is a forensic pathologist, which is a subspecialty of pathology limited to the investigation of undetermined or questionable deaths. (Sperry Depo., p. 33, l:7-17). It can also include the interpretation of the cause of injuries in living and deceased individuals. (*Id.* at 90, l:18-24.) He does not treat patients, nor is he involved in recommending therapeutic procedures. (*Id.* at 25, l:19-22.) Nothing in Dr. Sperry's training, experience, or education makes him qualified to opine as to the treatment for an ECAST event.[7] Indeed, Dr. Sperry concedes that he does not hold himself out to be an expert as it pertains to *clinical* experience with sickle cell patients, including those experiencing ECAST and would defer to a hematologist.[8] (*Id.* at 32, l:9-10, p.

---

[7] Moreover, Dr. Sperry admittedly is not an expert in the field of EMS or first responders. (Sperry Depo., p. 150, l:2-5.)

[8] In particular, Dr. Sperry testified that such a hematologist would likely be at Emory University. (Sperry Depo., p. 26, l:4-18.) Dr. Carlton Dampier, a clinical hematologist and professor at Emory University School of Medicine with a focus in pediatric sickle cell disease, agrees that Dr. Sperry is not an expert as it pertains to the clinical diagnosis and treatment of ECAST. (*See* Expert Report of Dr.

143, l:10-16, p. 25, l:10-22 ("Q: Would you consider yourself an expert with respect to sickle cell trait? A: In a sense. I'm not a hematologist and so it's not something that I, you know, routinely diagnose or treat patients, you know, with sickle cell trait. So I would wouldn't consider myself an expert in, you know, clinical aspects, no.").)

The mere fact that Dr. Sperry holds a medical degree is not sufficient to render him an expert in the entire field of medicine. *See Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir. 1994) ("It is like declaring an attorney an expert in the 'law.' A divorce lawyer is no more qualified to opine on patent law questions than anyone else, and it is a mistake for a trial judge to declare anyone to be

---

Carlton Dampier, p. 4, ("Sperry is not qualified as a sickle cell trait or sickle cell disease expert and is unable to give an expert opinion as to clinical recognition and treatment of exercise collapse associated with sickle trait. This is based upon his field of medical training, education and experience, in addition to his deposition testimony where he demonstrated a significant misunderstanding of many aspects of the hematology of sickle trait and of current understanding of ECAST. For example, he erroneously stated that the military has successfully introduced interventions that have reduced ECAST events when the reality is that the military has a strict protocol to reduce exertional heat illness during recruit training but ECAST continue to occur in other settings; his description of pathophysiology and treatment of sickle cell crises was incorrect; his description of sickling of sickle trait cells was completely incorrect as he misunderstand the intracellular distribution of sickle hemoglobin in sickle trait erythrocytes; his description of the interpretation of the post-mortem electrophoresis was incorrect; and his perception that ECAST is potentially a common consideration in African-Americans with difficulty breathing and altered mental status is no[t] only incorrect, but clinically implausible."), attached as Exhibit B.)

generically an expert.").  To the contrary, courts have excluded expert testimony that might implicate the expert's field or discipline if the expert has no specific experience or background with the topic in dispute and has not satisfied the court that he has obtained expertise in regard to the topic in preparation for litigation. *See*, *e.g.*, *U.S. v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005) (upholding district court's refusal to qualify a chemistry consultant as an expert in controlled substances because he did not have a chemistry degree and had only worked with the chemical substance at issue in the case on "isolated projects"); *Wright v. Case Corp.*, 2006 WL 278384, at *3 (N.D. Ga. Feb. 1, 2006) (finding that a mechanical engineer was not qualified to testify that the product at issue was defective or to offer alternative designs because he "ha[d] very little experience with the machinery at issue.").

Given Dr. Sperry's admitted lack of competence in hematology and complete lack of training, experience, knowledge, and skill as it relates to the clinical diagnosis and treatment of ECAST, he is not qualified to render opinions in this case.

## C.   Dr. Sperry's Opinions Are Unreliable and Speculative

Assuming, *arguendo*, that Dr. Sperry was competent to proffer ECAST-related opinions, he has failed to set forth a reliable basis upon which his

conclusory opinions were formed.   When an expert's "factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'"   *Kumho*, 526 U.S. at 148 (quoting *Daubert*, 509 U.S. at 592).   As the United States Supreme Court has stated, "'knowledge' connotes more than subjective belief or unsupported speculation."   *Daubert*, 509 U.S. at 590.   "Time and credentials in a field alone do not create a sufficient basis for testimony; an expert must provide specific explanation of his or her methods and reasoning to insure his or her conclusions rest upon a reliable basis."   *Spears v. Cooper*, 2008 WL 5552336 (E.D. Tenn., Nov. 17, 2008).

Speculative expert testimony is not reliable because it is not based on sufficient facts or data or on scientific principles and methods.   Under Rule 702, it is the Court's gatekeeping duty "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (internal quotation marks omitted); *see also United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) ("Certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should

exclude his testimony."); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) (per curiam) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion."). A district court must not simply "'tak[e] the expert's word for it.'" *Edwards v. Shanley*, 580 Fed. Appx. 816, 823, (11th Cir. 2014) (inner citations omitted). "If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

Here, even a superficial examination of Dr. Sperry's opinions and deposition testimony establishes that he cannot tie his conclusions to accepted medical standards of care for clinically diagnosing and treating ECAST, because there are none.[9] Similarly, there is no basis for Dr. Sperry's survivability opinion. Such

---

[9] Dr. Sperry relies upon five articles in support of his opinions: Richard D. Quattrone, et al., Exercise Collapse Associated with Sickle Cell Trait (ECAST): Case Report and Literature Review, Current Sports Medicine Reports, Vol. 14, Issue 2 (March/April 2015), attached as Exhibit C; Blinder, Morey, Exertional Sickling: Questions and Controversy (2014), attached as Exhibit D; O'Connor, Francis G., et al., ASCM and CHAMP Summit on SCT: Mitigating Risks for Warfighters and Athletes (July 2012), attached as Exhibit E; Azza A. G. Tantawy, The Scope of Clinical Morbidity in Sickle Cell Trait, The Egyptian Journal of Medical Human Genetics (Aug. 2014), attached as Exhibit F; Geoffrey Tsaras, et al., Complications Associated with Sickle Cell Trait: A Brief Narrative Review, The American Journal of Medicine (2009), attached as Exhibit G. (Sperry Depo., p. 112, Exhibits 6, 7A-D.)

opinions amount to pure *ipse dixit* – "it is because I say so," and thus, must be excluded.

      1. <u>Dr. Sperry Has No Reliable Basis to Insinuate That These Defendants Should Have Recognized an ECAST Event</u>

Dr. Sperry admits (and the other experts agree) that these defendants, as first responders to the arrest scene, would have no capability to diagnose an ECAST event in the field.  (Sperry Depo., p. 150, l:10-11, p. 151, l:5-8; Dampier Report, p. 4; Robert Krause Depo., p. 155, l:10-13, attached as Exhibit H.)  At the same time, Dr. Sperry makes the preposterous assertion that, because Wilson appeared to be an African-American with complaints of difficulty breathing, these defendants should have considered sickle cell trait on the differential.  (Sperry Depo., p. 71, l:4-7 ("And, of course, having someone who is of African lineage should give, you know, a clue to the possibility that there's a sickle cell trait maybe, you know, the underlying culprit."); p. 148, l:18-25.)   There is no credible basis for such a ludicrous assertion.

First, there is no medical basis for first responders to assume that individuals that appear to have "African lineage" and breathing difficulty is suffering from ECAST.  As noted, ECAST is an incredibly rare event and there are much more common considerations in evaluating individuals with breathing symptoms. (Carlton Dampier Depo., p. 121, l:2-12, attached as Exhibit I.) Thus, ECAST is not

going to be a medical provider's first diagnosis. (*Id.*) And outside of the military and hematology communities focused in sickle cell disease and trait, this event is not well-known.  (*Id.*)  Further, no one would expect EMS personnel to recognize or diagnose an ECAST event. (Sperry Depo., p. 150, l:10-11 ("No one could…make that diagnosis."); Dampier Report, p. 4.) In fact, essentially no one can make ECAST diagnosis during the event; instead, ECAST is usually diagnosed post-mortem. (Sperry Depo., p. 142, l:1-3, p. 143, l:22-24; Dampier Depo., p. 121, l:3-12.)

There is no evidence or data to even suggest that these defendants should have realized that Wilson was experiencing an ECAST event on the night of the incident.  Thus, any opinion that even implies that they should have considered such a diagnosis as a possibility is absurd and must be excluded as unreliable.

  2.  Dr. Sperry Has No Reliable Basis to Opine That Treatment for a Suspected ECAST Event Consists of Oxygen and Fluids

Despite his admitted lack of qualifications as it pertains to the diagnosis and treatment of an ECAST event, Dr. Sperry opines that the initial treatment for a *suspected*[10] ECAST event is the administration of oxygen and provision of fluids in

---

[10] Dr. Sperry's treatment recommendation relies on the assumption that the medical provider recognizes the patient is experiencing an ECAST event. (Sperry Depo., p. 167, l:3-14.) As discussed above, it was impossible for these defendants to know that.

order to restore tissue and organ perfusion and oxygenation to prevent further damage and possible death.[11]  Dr. Sperry is unable to cite any competent support for this opinion. (Sperry Depo., p. 167, l:3-6, p. 168, l:8-25, p. 169, l:1-21, p. 171, l:9-19, p. 173, l:4-25, p. 174, l:1-2, pp. 183-84.) This should not be surprising because there are none.

As a threshold matter, ECAST is a rare event that has been difficult to study in the medical field. (Sperry Depo., pp. 50-52, p. 139, l:4-10; Tsaras Article, p. 509; Blinder Article, p. 66.) The majority of case reports are comprised from events occurring in college athlete and warfighter populations.[12]  The articles upon which Dr. Sperry relies make clear that there are no controlled studies documenting ECAST events or incidence rates.  It is unrealistic (and unethical) to perform a well-controlled, hypothesis-driven, prospective study to examine sickle cell trait and exertional collapse in association with ECAST. (O'Connor Article, p. 2053; Sperry Depo., p. 173, l:13-25, p. 174, l:1-2.) Predictably, there are no well-controlled interventional trials on persons experiencing an ECAST event.

---

[11] Dr. Sperry forms this opinion although he admits that essentially no one, including these defendants, would have the capability to diagnose or recognize an ECAST event in the field; instead, ECAST is usually diagnosed post-mortem. (Sperry Depo., p. 142, l:1-3, p. 143, l:22-24; Dampier Depo., p. 121, l:3-12.). Thus, Dr. Sperry is essentially opining that while these defendants are not capable of diagnosing or recognizing an ECAST event, they should have administered the proper treatment for such an event.

[12] *See* Quattrone Article, p. 3; Blinder Article; O'Connor Article.

(O'Connor Article, p. 2051.)

While the pathophysiology of these events remains poorly understood,[13] current models suggest a process of extreme exertion causing acidosis, hypoxia, hyperthermia, and dehydration leading to diffuse muscle cellular injury and extreme metabolic disturbances, principally hyperkalemia, with subsequent cardiovascular collapse and sudden death from cardiac arrhythmias. (Dampier Report, p. 3.)  However, there are numerous variables present in an ECAST event that are still unknown, and these variables differ from patient to patient. (Sperry Depo., p. 137, l:4-20; Quattrone Article, p. 4.)  Furthermore, there is no known correlation between those variables and survivability. (Sperry Depo., p. 137, l:21-25, p. 138, l:1-12.)

Given the lack of peer-reviewed studies and understanding of the pathophysiology of an ECAST event, there are no evidence-based guidelines for managing an ECAST event.[14] (Sperry Depo., p. 166, l:14-18; O'Connor Article, p.

---

[13] Blinder Article, p. 68.

[14] The O'Connor article states that the best practice for warfighters experiencing suspected ECAST is following chain of survival and prompt execution of an effective emergency action plain emphasizing rapid recognition and early intervention. However, there is no evidence or data stating that such an intervention is beneficial to the patient or resolves the event. (O'Connor Article, p. 2052.) The Blinder article comments directly on this – ("National Athletic Trainers' Association has made recommendations on preventative measures including longer rest and recovery periods between conditioning repetitions,

2052; Blinder Article, p. 66 ("Recommendations and guidelines that are in place for the early recognition of ECAST and the prevention and treatment of the illness are not well defined and remain fragmented.").) In other words, there is no established clinical treatment for someone experiencing ECAST. Not one of Dr. Sperry's articles states that oxygen and fluids "treat" an ECAST event.[15] There is simply no data to support the notion that any intervention treats or resolves the event.[16] Thus, these articles cannot form the basis for the "treatment" opinion that Dr. Sperry seeks to provide.

   In truth, optimal treatment of ECAST is undefined and is usually a medical

---

exclusion from performance tests, hydration, and available supplemental O2. **Whether this approach will prove effective in preventing ECAST remains controversial**.") (Blinder Article, p. 67.) (Emphasis added.)

[15] The Tsaras article suggests that an event is managed as a medical emergency with high flow oxygen administration, saline infusion for presumed rhabdomyolysis, and appropriate use of external defibrillation. (Tsaras Article, p. 510, FN 33.) However, the article cites to a consensus statement issued by the National Athletic Trainers' Association, which does not cite to any studies, data, or sources to support this statement. (*See* Consensus Statement, attached as Exhibit J.) Thus, there is absolutely no reliable, substantiated basis to support Dr. Sperry's opinion.

[16] A closer reading of the literature shows that there are recommendations for **preventative** measures, including careful attention to hydration, progressive heat acclimatization, and graduated condition and training. (O'Connor Article, p. 2051; Quattrone Article, p. 7; Tsaras Article, p. 510.) These are prospective interventions, not reactive treatment. And even utilizing these precautions, exercise-related death continued to occur. The literature highlights that it is even difficult to definitively evaluate the effectiveness of the preventative approach. (O'Connor Article, p. 2050.)

emergency that falls to first responders rather than to hematologists or others with appropriate expertise in sickle cell disease. (Blinder Article, p. 69.)  Only a few organizations have published treatment recommendations, and there are no well-designed studies in the medical literature describing successful or unsuccessful approaches. (*Id.*)  While many organizations have overlapping ideas on how to manage suspected ECAST, their suggestions and opinions vary and fail to provide consistent advice for those caring for athletes or others who might be at risk. (*Id.*)  No approach has been tested in a clinical study. (*Id.*)

Even if one were to assume that these defendants should have recognized an ECAST event and started oxygen and fluids, Dr. Sperry can offer no opinion as to the **specific** recommended use of oxygen and fluids for treatment of sickling – because no such use has been proven to be effective. (Sperry Depo., p. 186, l:21-25.)  Dr. Sperry concedes that he is unaware of any specific recommendation as to what type of fluids to provide; the certain rate at which to provide these generic fluids; the quantity of fluids to provide; how long to provide the fluids; or, at what point in the ECAST process to provide the fluids. (*Id.*, p. 152, l:24-25, p. 153, l:1-3, 18-20, p. 187, l:21-25, p. 188, l:1.)  In terms of oxygen, he admittedly has no knowledge as to what level of oxygen is administered to an ECAST patient or for how long. (*Id.*, p. 155, l:6-12, p. 186, l:21-25.) In fact, Dr. Sperry admits that the

pathophysiology of what occurs when a patient is given oxygen and fluids for an ECAST event is unknown. (*Id.*, p. 71, l:21-25, 72, l:1-4.) Suffice it to say, the *ipse dixit* nature of Dr. Sperry's treatment is exposed by his inability to provide any details on the purported treatment and what actual impact it would have on a pathophysiological level.

3. Dr. Sperry Has No Reliable Basis to Opine That Had These Defendants Administered Oxygen and Fluids to Wilson, It Is More Probable Than Not that Wilson Would Have Survived

At the outset, Dr. Sperry admits that there is not a single evidence-based study that supports his opinion that Wilson's death could have been prevented through use of oxygen and fluids.

> Q: You are not able to cite to us any peer review study that would support the proposition that providing prompt fluids and oxygen would result in reduced mortality?
>
> **A: Okay. As far as specific studies that reach that conclusion, no. I mean that gets back to what I read to you. There are no, you know, evidence-based studies that, that are able to statistically arrive at that conclusion.**

(Sperry Depo., p. 171, l:10-19.)

> Q: And while you believe that hydration and oxygen would have saved [Wilson's] life, there is no scientific peer review article which establishes that to true, correct?
>
> **A: That's correct.**

(Sperry Depo., p. 183, l:17-21.)  Such a study does not exist. (Sperry Depo., p. 171, l:20-25, p. 184, l:15-20.) There is, in fact, no data or study to support the hypothesis that provision of oxygen and fluids increases survivability in an ECAST patient to any degree, much less "more likely than not" as Sperry would have the Court and a jury believe. (Sperry Depo., p. 174, l:19-24, p. 175, l:1-5.)

Again, Dr. Sperry's survivability opinion is *ipse dixit*.  He simply draws the conclusion that Wilson would have survived if he was provided with oxygen and fluids. (Sperry Depo., p. 183, l:17-25, p. 184, l:1-4.)  At the same time, he has no choice but to concede that no literature draws the conclusion that lives would be saved by the administration of oxygen and fluids. (Sperry Depo., p. 184, l:5-20.)

This is so because there are so many unknown factors as it relates to an ECAST event; it is impossible to determine what interventions, if any, would have increased survivability. (Sperry Depo., p. 179, l:12-19.) Furthermore, because of the ethical and practical difficulties associated with experimenting possible treatments, there are no evidence-based studies to support any survivability opinion.[17] In fact, the literature is based upon case reports of people who have died from the event.  Thus, Dr. Sperry's opinion that oxygen and fluids would have

---

[17] Dr. Sperry's articles make clear that **no one** is capable of giving a survivability opinion as it relates to ECAST given the various unknowns that still exist and the lack of studies.

18

affected Wilson's survivability, much less saved Wilson's life, has absolutely no basis and consists solely of *ipse dixit*.  Such an unreliable and unfounded opinion must be excluded.  Fed. R. Evid. 702(b), (c), and (d).

### 4. Dr. Sperry Has No Reliable Basis to Opine That Had These Defendants Transported Wilson to the Hospital, It Is More Probable Than Not that Wilson Would Have Survived

Given that there is no intervention or treatment proven to be effective, there is no competent basis to support Dr. Sperry's opinion that transport to the hospital would have prevented Wilson's death.  To the contrary, even if these defendants had transported Wilson to the hospital, it remains speculative that the medical providers at the hospital would have recognized that Wilson was experiencing an ECAST event.  Again, Dr. Sperry acknowledges that ECAST is rarely, if ever, a clinical diagnosis at and around the time of the event. (Sperry Depo., p. 143, l:22-24.) Instead, the event is usually recognized at autopsy. (*Id.*)  Further, had the providers been able to guess correctly that Wilson was experiencing an ECAST event, as addressed above, there is no known effective treatment that ensures survivability for an ECAST event.   Thus, Dr. Sperry's opinion is wholly speculative and must be excluded.

In sum, courts have recognized "over and over that an expert's *ipse dixit* is inadmissible.  'An expert who supplies nothing but a bottom line supplies nothing

of value to the judicial process.'"  *Wendler & Ezra, P.C. v. American Int'l Group*, 521 F.3d 790, 791 (7th Cir. 2008) (citations omitted); *see also General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Here, a plain reading of the articles Dr. Sperry relies upon demonstrates that there is no data or literature supporting his opinion that fluids and oxygen are an effective treatment for an ECAST event.  Furthermore, Dr. Sperry admits that there are no studies or articles or data of which he is aware that support that his speculation that administration of oxygen and provision of fluids in addition to transport to a hospital would have prevented Wilson's death.  In sum, Dr. Sperry's opinions are nothing more than inadmissible *ipse dixit*.

### III.   CONCLUSION

Not only is Dr. Sperry unqualified to opine as to the clinical diagnosis and treatment of ECAST, but his opinions are completely unreliable and speculative. Even with the benefit of hindsight and knowledge that a patient was experiencing ECAST, there is no established treatment for such an event; only guidelines recommended by a few organizations with no data or evidence to support their effectiveness.  And there is absolutely no peer-reviewed literature or studies that

conclude, or even suggest, that administration of oxygen and fluids would prevent the death of someone experiencing ECAST.    Therefore, these defendants request that the Court grants its motion excluding these opinions of Dr. Sperry.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Sara E. Brochstein*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Sara E. Brochstein
Georgia Bar No. 446366
sbrochstein@fmglaw.com

*Attorneys for Defendants Bryan Porterfield and Sean Flack*

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)
3621038v1

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel hereby certifies that the foregoing memorandum of law was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1(C).

This 2nd day of November, 2018.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Sara E. Brochstein*
Sara E. Brochstein
Georgia Bar No. 446366
sbrochstein@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BRYAN PORTERFIELD AND SEAN FLACK'S MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. KRIS SPERRY to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants.  Counsel of record are:

Jeffrey R. Filipovits
FILIPOVITS LAW FIRM, P.C.
2900 Chamblee-Tucker Road, Bldg. 1
Atlanta, GA  30341

Brian R. Dempsey
CAROTHERS & Mitchell, LLC
1809 Buford Highway
Buford, Georgia 30518

Harvey S. Gray
Dianna J. Lee
GRAY RUST ST. AMAND MOFFETT &
BRIESKE, LLP
950 East Paces Ferry Rd.,
1700 Atlanta Plaza
Atlanta, GA 30326

G. Brian Spears
1126 Ponce de Leon Avenue
Atlanta, GA  30306

This 2nd day of November, 2018.

*//s// Sara E. Brochstein*
Sara E. Brochstein
Georgia Bar No. 446366
sbrochstein@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

23