# Official Report



**Division of Forensic Sciences**
**Georgia Bureau of Investigation**
**State of Georgia**

**Headquarters**
**DOFS Case #:** 2015-1005060
**Report Date:** 06/16/2015

George Herrin, Jr., Ph.D.
Deputy Director

ASCLD/LAB-International
Accredited Testing Laboratory

**Requested Service:** Toxicology - Postmortem
    Agency:       GBI-Reg. 10-Conyers
    Agency Ref#:
    Requested by:   R. Bigham

**Case Individuals:**
   Victim: MARTEZ WILSON

**Evidence:**
On 03/04/2015, the laboratory received the following evidence from the GBI-Medical Examiner-HQ DOFS via Lockbox.

| | |
|---|---|
| 2015-1005060-002 | Sealed plastic bag(s) containing the following items identified as collected from Martez Wilson |
| 2015-1005060-002A | Three tubes containing iliac blood |
| 2015-1005060-002B | Two tube(s) containing femoral blood |
| 2015-1005060-002C | Two tube(s) containing urine |
| 2015-1005060-002D | Jar containing liver |
| 2015-1005060-002E | Jar containing gastric contents |

**Results and Conclusions:**

**Drug Screen Results by:**      Immunoassay

| Subm#: | Drug Screen Classification | Result |
|---|---|---|
| 002A | blood-barbiturates | Negative |
| | blood-cannabinoids (marijuana) | Indicative |
| | blood-certain benzodiazepines | Negative |
| | blood-cocaine/cocaine metabolites | Negative |
| | blood-common opioids | Negative |

**Drug Confirmation Results**
Submission 002B

1) Positive, THC, 40 ng/mL (+/- 5 ng/mL) *{LC/MS/MS}*

   delta-9-tetrahydrocannabinol

2) Positive, 11-OH-THC, 3.4 ng/mL (+/- 0.4 ng/mL) *{LC/MS/MS}*

   11-hydroxy-delta-9-tetrahydrocannabinol, a metabolite of THC

3) Positive, THC-COOH, 26 ng/mL (+/- 3 ng/mL) *{LC/MS/MS}*

   11-nor-delta-9-tetrahydrocannabinol-9-carboxylic acid, a metabolite of THC

4) Negative for: *{LC/MS/MS}*

   certain benzodiazepines.

5) Negative, certain basic drugs *{LC/MS/MS}*

   such as citalopram and methadone.

**Abbreviations:**
   GC/MS = Gas chromatography/Mass Spectrometry
   LC/MS/MS = Liquid Chromatography/Mass Spectrometry/Mass Spectrometry

**Measurement Uncertainty:**
Estimations of measurement uncertainty for all toxicology quantitations are reported at a coverage probability of 95.45%.

Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) and fire debris extracts will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.

Technical notes and data supporting the conclusions and findings in this report are maintained within the laboratory case records.

This case may contain evidence that must be preserved in accordance with O.C.G.A. § 17-5-56.


Joseph Austin
Forensic Toxicologist

**Related Agencies:**

Douglas Judicial Circuit
GBI-Medical Examiner-HQ DOFS
Douglas Co. District Attorney
Douglasville Police Department
Douglas Co. Coroner

ACN: MARTIN

# End of Official Report

WILSON - 216

# Official Report



| | | |
|---|---|---|
| Division of Forensic Sciences | Headquarters | |
| Georgia Bureau of Investigation | DOFS Case #: | 2015-1005060 |
| State of Georgia | Report Date: | 04/06/2015 |

George Herrin, Jr., Ph.D.
Deputy Director

ASCLD/LAB-International
Accredited Testing Laborato



**Requested Service:** Blood Alcohol - Postmortem
**Agency:** GBI-Reg. 10-Conyers
**Agency Ref#:**
**Requested by:** R. Bigham

## Case Individuals:

Victim: MARTEZ WILSON

## Evidence:

On 03/04/2015, the laboratory received the following evidence from the GBI-Medical Examiner-HQ DOFS via Lockbox.

| | |
|---|---|
| 2015-1005060-002 | Sealed plastic bag(s) containing the following items identified as collected from Martez Wilson |
| 2015-1005060-002A | Three tubes containing iliac blood |
| 2015-1005060-002B | Two tube(s) containing femoral blood |
| 2015-1005060-002C | Two tube(s) containing urine |
| 2015-1005060-002D | Jar containing liver |
| 2015-1005060-002E | Jar containing gastric contents |

## Results and Conclusions:

**Subm#: 002B**

1)   Ethyl Alcohol Result by Gas Chromatography:  negative
     These results may be unreliable due to the clotted nature of the sample.

## Measurement Uncertainty:

Estimations of measurement uncertainty for ethyl alcohol, methyl alcohol, isopropyl alcohol and acetone concentrations are reported at a coverage probability of 99%.

Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) and fire debris extracts will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.

Technical notes and data supporting the conclusions and findings in this report are maintained within the laboratory case records.

This case may contain evidence that must be preserved in accordance with O.C.G.A. § 17-5-56.

*Amanda Crow*

Amanda Crow
Forensic Toxicologist

## Related Agencies:

Douglas Judicial Circuit
GBI-Medical Examiner-HQ DOFS                    ACN: MARTIN
Douglas Co. District Attorney
Douglasville Police Department

WILSON - 217

Douglas Co. Coroner

**End of Official Report**

WILSON - 218

# DIVISION OF FORENSIC SCIENCE

J.R. Davidson ( Douglasville Police Department)
Logout

| My Profile |

Smart Search (case#, acn or name)

Home
  DOFS Staff Directory
Searches
  Case Search
  Priority Cases
  Updated Cases (<60 days)
  Custom Searches
  Watched Cases
Recent Cases
Case Management
  Online Submission Form
  Evidence ready for pickup
  Cancel Services
Statistics / Reports
Documents and Other...
Links
Contact Us

## EVIDENCE LOCATION: 2015-1005060

Return to case: 2015-1005060

The information on this report is valid only at the time it is run. Please contact the lab to verify the location prior to pickup.

| Item | Description | Location | xfer Date | Via |
|------|-------------|----------|-----------|-----|
| 001 | DECEDENT | DOFS Headquarters | | |
| 002 | Sealed plastic bag(s) containing the following items identified as collected from Martez Wilson | Destroyed per lab policy | | |
| 002A | Three tubes containing iliac blood | DOFS Headquarters | | |
| 002B | Two tube(s) containing femoral blood | DOFS Headquarters | | |
| 002C | Two tube(s) containing urine | DOFS Headquarters | | |
| 002D | Jar containing liver | DOFS Headquarters | | |
| 002E | Jar containing gastric contents | DOFS Headquarters | | |
| 003 | Sealed package containing bloodstain card labeled "Martez Wilson" | DOFS Headquarters | | |
| 004 | Postmortem fingerprints of Martez Wilson taken at time of autopsy | DOFS Headquarters | | |
| 005 | Sealed package containing 10 sections labeled "MARTEZ WILSON" | Federal Express Service | 03/11/2015 | |
| 006 | 10 slides from item 005 | DOFS Headquarters | | |

WILSON - 219

**Official Report**



| Division of Forensic Sciences | Headquarters | |
|---|---|---|
| Georgia Bureau of Investigation | DOFS Case #: | 2015-1005060 |
| State of Georgia | Report Date: | 07/29/2015 |

George Herrin, Jr., Ph.D.
Deputy Director

\* NAME Accredited \*



**Requested Service:** Autopsy
   Agency:       Douglas Co. Coroner
   Agency Ref#:
   Requested by:   N. Mitchell

**Case Individuals:**
   Victim: MARTEZ WILSON

**Evidence:**
     2015-1005060-001         DECEDENT

**Results and Conclusions:**
   Evidence Submission: 001
       INTRODUCTORY REMARKS:

       In accordance with the Georgia Death Investigation Act, an autopsy is performed on the body identified at this time as "UID Douglas" (later identified as Martez Wilson) at the Georgia Bureau of Investigation, Medical Examiner Office, Decatur, Georgia, on Tuesday, March 3, 2015, commencing at 9:40 a.m.

       PRESENTATION OF BODY:

       The body is received lying supine in a light-duty, blue plastic body pouch.

       EXTERNAL DESCRIPTION:

       The unembalmed, clad remains are those of a normally developed, young adult Black male appearing consistent with the reported age of 21 years. The body measures 65 ½ inches in length and weighs 157 pounds.

       The body is clad in the following items:
         1.   One gray hooded sweatshirt with a red logo over the front
         2.   One pair of plaid red boxer shorts
         3.   One pair of blue jeans. This item is received pulled down halfway to the thighs
         4.   One pair of black socks
         5.   One pair of multicolored shoes
         6.   One red and white belt along the loops of the pants

       The following personal items are on the body:
         1.   One white-metal necklace with a white-metal pendant.

       The head is normocephalic. The atraumatic scalp is covered with short, coarse black hair. The facial hair consists of a wisp of black mustache above the upper lip and a small tuft of black hair over the chin. The corneas are clear and translucent. The irides are brown. The pupils are round and equal. The scleras and conjunctivae are anicteric. The ears are well developed and normally set. Each earlobe has one piercing. The nasal septum is intact upon palpation. Natural dentition is present and appears to be in adequate degree of repair. The oral cavity is lined by a dark red and moist surface. The frenula are intact. The neck is supple with the trachea palpated at the midline. The chest is symmetrical. No subcutaneous crepitance is noted upon palpation. The abdomen is soft and flat. The umbilicus is unremarkable. The external genitalia are those of an adult male. The penis is circumcised. There is an adequate amount and distribution of black pubic hair. There is no evidence of perineal trauma. The anus is intact. The back is unremarkable. Both upper and lower

WILSON - 220

extremities are normally developed and symmetrical, without absence of digits. The fingernails are long and dirty. There is no evidence of trophic changes. The toenails are overgrown, slightly dirty and hypertrophic. The plantar surfaces of both feet are slightly dirty.

Rigidity is present and holding. Lividity is noted along the posterior dependent surfaces of the body except in areas of pressure.

IDENTIFYING MARKS/SCARS:

None are readily apparent.

EVIDENCE OF RECENT THERAPEUTIC INTERVENTION:

1.    There is a pair of adhesive defibrillator pads in place: one on the right upper chest; one on the left lower chest.
2.    There are four adhesive EKG pads in place: one on the right shoulder; one on the left shoulder; one on the right side of the abdomen; one on the left side of the abdomen.

EVIDENCE OF RECENT TRAUMA:

1.    There is a small, linear abrasion measuring 4 cm in length on the medial aspect of the left elbow.
2.    On the palmar aspect of the left hand, towards the base of the index finger, there is a 0.9 cm in diameter superficial, dark red abrasion. In addition, there is a cluster of three small superficial abrasions on the thenar aspect of the hand. There are three, small, punctated abrasions towards the medial aspect of the palmar surface.
3.    On the anterior medial aspect of the left knee, there is a 1 cm in diameter, dark red contusion. Below it, there are two small superficial, dark red abrasions.
4.    On the anterior surface of the left lower leg is a small, superficial abrasion. As similar appearing wound is on the medial surface.
5.    On the anterior-medial aspect of the left lower leg, above the ankle, there is a cluster of at least three, linear (oriented perpendicular to the long axis of the body) superficial abrasions measuring 1.5 x 1 cm.
6.    On the right knee, there is a cluster of very superficial, small abrasions measuring 1.5 x 0.8 cm in aggregate.
7.    Below the right knee, there are two small, dark red, superficial abrasions ranging from 0.2 to 0.4 cm in greatest dimensions.
8.    On the palmar surface of the right 4th finger, towards the base, there is a 4 cm in length, full-thickness laceration that extends from the palm upwards to halfway the phalanx. The underlying tendon is exposed and appears to be partially torn.
9.    On the distal palmar surface of the right 5th finger, there is a small dark red contusion.
10.   Just distal to the right elbow, there are two small dark red abrasions. In addition, there is a small, 1 cm in diameter, dark red contusion.

INTERNAL DESCRIPTION:

Body Cavities:

The body is opened with the usual "Y" shaped incision. The subcutaneous fat pad measures 1 cm in thickness at the anterior abdominal level. The exposed peritoneal surfaces are smooth and glistening, without evidence of hemorrhage. The anterior chest wall and the clavicles are intact. The organs in both the thoracic and abdominal cavities maintain their usual anatomical relations. There is no significant fluid accumulation present in either of the pleural cavities or the abdominal cavity. The diaphragmatic surfaces are intact.

The organs in the neck and chest are removed en-bloc.

Cardiovascular System:

The heart weighs 320 grams. The epicardial surface is smooth and glistening. The coronary

arteries follow a normal anatomical distribution. They are serially sectioned in-situ and are widely patent throughout. The heart is bread-loafed. There is no evidence of chamber dilatation or mural hypertrophy. The left ventricular wall measures 1 cm in thickness at the base of the posterior papillary muscle and the right ventricular wall measures 0.3 cm at the outflow. The myocardium is uniformly dark red and finely granular. Grossly, no focal lesions are seen. The cardiac valves are normally developed and easily mobile. No vegetation or calcification is present. The origins of the coronary ostiae are unremarkable. The inner lining of the aorta is smooth, without significant calcifications. No abnormal stenosis or dilatation is grossly seen. The major branches' orifices are patent. The pulmonary vasculature is normally developed and patent.

Respiratory System:

The right lung weighs 300 grams and the left lung weighs 250 grams. The pleural surfaces are smooth and glistening. Each lung features normal lobation. The parenchyma is crepitant. No hyperinflation is present. No focal masses or areas of consolidation are grossly observed. The airways are patent. There are no intrabronchial masses.

Hematolymphatic System:

The spleen weighs 130 grams. The capsule is dark red and smooth. The parenchyma is dark red and soft. Grossly, no focal lesions are seen. There is no evidence of generalized lymphadenopathy. They thymus is involuted.

Genitourinary System:

Each kidney weighs 120 grams. The fibrous capsules are detached without difficulty. The cortical surfaces are dark red and smooth. The kidneys are bisected revealing an unremarkable parenchyma. No focal masses are present. Both ureters drain into the bladder which contains 250 ml of yellow urine. The bladder epithelium is intact. The prostate gland and the testicles are grossly unremarkable.

Hepatobiliary System:

The liver weighs 1340 grams. The capsule is smooth and glistening. The parenchyma is dark red and smooth. No focal masses are present. The gallbladder is present and is grossly unremarkable. No stones are present.

Gastrointestinal System:

The tongue is intact, without evidence of intralingual hemorrhage. The esophageal epithelium and the gastric mucosa are grossly unremarkable. The stomach contains 100 ml of black, mostly liquid material. No abnormal coloration or odor is observed. The small and large intestines are grossly unremarkable upon external examination. The distal recto-sigmoid area is grossly unremarkable. No evidence of bleeding is present.

Endocrine System:

The pancreas, the adrenal glands and the thyroid gland are grossly unremarkable.

Head:

On reflection of the scalp, no lesions are seen. The exposed skull is intact. The brain weighs 1460 grams. The dura is intact. There is no evidence of epidural, subdural or subarachnoid hemorrhage. The leptomeninges are thin and semi-transparent. Of note, the cortex seems dusky in appearance. The vessels at the base of the brain are normally developed and patent. There is no evidence of herniation. The brain is sectioned in a coronal fashion. There is no evidence of intracerebral hemorrhage or abnormal masses present. The brainstem and cerebellum are grossly unremarkable, same as the base of the skull after removal of the basal dura.

WILSON - 222

Neck Organs:

The epiglottis is not swollen. The epithelium is smooth and tan. The vocal cords are intact.
The strap muscles are grossly unremarkable. The hyoid bone and the laryngeal cartilages are
intact.

Musculoskeletal System:

The vertebral column is intact. There is no evidence of retroperitoneal hemorrhage.

Examination ended at 11:15 a.m.

TOXICOLOGY:

Blood (femoral vein, iliac vein), gastric contents, urine, liver

PHOTOS:

Yes

X-RAYS:

No

HISTOLOGY:

Heart: For the most part, the myocytes are uniformly arranged and exhibit normal nuclear
morphology. Near the endocardial surface, myocytes feature enlarged and hyperchromatic
nuclei. The intramural blood vessels are normally formed but some feature a slight degree of
perivascular fibrosis. Many of the blood vessels are congested with normal appearing red blood
cells (RBCs'). However, many sickled RBCs' are also present.

Lungs: Acute congestion. Most of the RBCs' feature a sickled shape. There is no evidence of
pneumonia or neoplasia.

Spleen, Liver, Brain: Acute congestion. Most RBCs' feature a sickled shape.

Kidneys: Acute congestion. Most RBCs' feature a sickled shape. No crystals are seen under
polarizing light.

SPECIAL STUDIES:

1.   Ocular fluid for electrolytes: non-contributory
     a.   Sodium: 151 mEq/L
     b.   Chloride: 131 mEq/L
     c.   Creatinine: 0.3 mg/dL
     d.   Glucose: Specimen unsuitable for assay
     e.   VUN: Specimen unsuitable for assay
2.   Blood for hemoglobin electrophoresis: Pattern consistent with Sickle Cell Trait
     a.   Hgb A2 (HPLC): 3.5 % [reference range: 2.7-3.5 %]
     b.   Hgb F (HPLC): 1.3 % [reference range: 0.2-1.8 %]
     c.   Hgb A (HPLC): 55 % [reference range: 96-99 %]
     d.   Hgb S (HPLC): 40 % [reference range: <1 %]
     e.   Solubility, Hgb (Sickledex): Positive

EVIDENCE RETAINED:

FTA blood spot card.

WILSON - 223

SUMMARY OF FINDINGS:

I.  Exercise-induced sickle cell crisis in an individual with sickle cell trait
    a.  Hgb A: 55 % [reference range: 96-99 %]
    b.  Hgb S: 40 % [reference range: <1 %]
II. Minor trauma: not contributory to death
III. Postmortem toxicology:
    a.  Ethanol: negative
    b.  + THC (?-9-tetrahydrocannabinol): 40 ng/mL
    c.  + 11-OH-THC (11-hydroxy-?-9-tetrahydrocannabinol, a metabolite of THC): 3.4 ng/mL
    d.  + THC-COOH (11-nor-?-9-tetrahydrocannabinol-9-carboxylic acid, a metabolite of
THC): 26 ng/mL
    e.  Negative for (LC/MS/MS): certain benzodiazepines
    f.  Negative for (LC/MS/MS): certain basic drugs such as citalopram and methadone

CAUSE OF DEATH:

Exercise-induced sickle cell crisis in an individual with sickle cell trait

MANNER OF DEATH:

Natural

SUMMARY & OPINION:

Martez Wilson was a 21-year-old man who died suddenly on March 3, 2015, while in custody.
In the early morning of 3/3/15, officers responded to a call for a burglary in progress.
Reportedly,
Mr. Wilson was found by an officer lying face down on the ground in the vicinity of the incident,
with his pants and underwear down his legs. He was told to place his hands behind his back.
Initially, he stated: "I can't" but then he complied and was handcuffed. At that time, a second
suspect emerged and was placed under arrest too. Other officers arrived at the scene. One of
them began taking Mr. Wilson into custody. At this time, Mr. Wilson replied: "I can't breathe".
Fire Rescue was summoned to the scene. A paramedic and an EMT evaluated Mr. Wilson
who at this time was seated in the back seat of the patrol car. A heart/pulse rate was obtained
(discrepancy in reports: one reads high 50's; one reads 111) and oxygen saturation above 90%
(one report reads in the high 90s'; one report reads 96). The paramedic and EMT determined
there was no evidence of respiratory problems. Mr. Wilson was transported to the local police
department for processing. It was noted that Mr. Wilson appeared to be asleep and would not
respond to the officer's questions. Once in the PD, after taking in the other suspect, the two
officers came back into the car to retrieve Mr. Wilson and escort him into the building. Mr.
Wilson was not responding and officers carried him into the building. It was at this time the
officers noted that Mr. Wilson was unresponsive, not breathing. CPR was begun soon after.
EMS responded to the scene and despite resuscitatory attempts, Mr. Wilson was pronounced
dead shortly after their arrival.

The autopsy completed later that day revealed only minor trauma, non-contributory to the
demise. No catastrophic disease was uncovered at the time to explain his sudden demise.
However, special studies revealed that Mr. Wilson suffered from Sickle Cell Trait (SCT). SCT
is a genetic blood disorder with a prevalence rate of approximately 8% in African-Americans
and 0.046% in non-Black Americans. Normally, a person inherits two copies of the gene that
produces beta-globin, a protein needed to produce normal hemoglobin (hemoglobin genotype
AA). A person with SCT inherits one normal allele and one abnormal allele encoding
hemoglobin S (hemoglobin genotype AS). In certain conditions where oxygenation at the
cellular level is low, like in exercise, the blood in persons with SCT may "sickle", taking an
abnormal shape, and the abilty to deliver oxygen to the tissues is affected.

After reviewing the circumstances surrounding the death, Mr. Wilson was seen running away
and found down on the ground shortly after. It is my opinion that exercise lowered his threshold

Division of Forensic Sciences
Georgia Bureau of Investigation

Continued
2015-1005060: Autopsy

to develop sickling and leading to a sudden death.

Only those items discussed in the results above were analyzed for this report. The above represents the interpretations/opinions of the undersigned analyst. Evidence analyzed in this report will be returned to the submitting agency. Biological evidence (body fluids and tissues) and fire debris extracts will be destroyed after one year. This report may not be reproduced except in full without written permission of the laboratory.

Technical notes and data supporting the conclusions and findings in this report are maintained within the laboratory case records.

This case may contain evidence that must be preserved in accordance with O.C.G.A. § 17-5-56.

Jacqueline Martin
Deputy Chief Medical Examiner

**Related Agencies:**

Douglas Judicial Circuit
GBI-Medical Examiner-HQ DOFS
GBI-Reg. 10-Conyers
Douglas Co. District Attorney
Douglasville Police Department

ACN: MARTIN

**End of Official Report**