IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTHONY WILSON and            )
KIMBERLY WILSON, the parents of   )
of Martez Wilson, and the ESTATE OF  )
MARTEZ WILSON,                )
                              )
            Plaintiffs,        )        CIVIL ACTION FILE
v.                            )        NO. 1:17-CV-00634-WMR
                              )
CITY OF DOUGLASVILLE, GA, et al.,  )
                              )
            Defendants.        )

## ORDER

This matter is before the Court on Defendants Brian Porterfield and Sean Flack's Motion for Summary Judgment [Doc. 119] and Motion to Exclude Opinions of Plaintiffs' Expert Dr. Kris Sperry [Doc. 120], along with Defendants City of Douglasville, Officer Coylee Danley, and Officer Andrew Smith's Motion for Summary Judgment [Doc. 132] and Motion to Strike Supplemental Expert Affidavit of Roger Clark [Doc. 163]. For the following reasons, Defendants Porterfield and Flack's Motion to Exclude Opinions of Plaintiffs' Expert Dr. Kris Sperry [Doc. 120] is GRANTED, Defendants City of Douglasville, Danley, and Smith's Motion to Strike Supplemental Expert Affidavit of Roger Clark [Doc. 163] is DENIED, Defendant's Porterfield and Flack's Motion for Summary Judgment [Doc. 119] is

1

GRANTED, and the Defendants City of Douglasville, Officer Danley, and Officer Smith's Motion for Summary Judgment [Doc. 132] is GRANTED IN PART and DENIED IN PART.

## I.    FACTUAL BACKGROUND

On March 3, 2013, a 911 call reported a burglary in progress. (Doc. 156-1 at ¶ 1).   Officer Danley and Officer Smith, employees of the Douglasville Police Department, responded to the call. (*Id.* at ¶ 2).   The responding officers began to canvass a residential neighborhood after being advised by dispatch that two black males were seen fleeing the crime scene on foot into the area. (*Id.* at ¶¶ 4- 5).   Officer Danley observed a black male, later identified as Martez Wilson, lying in the middle of a driveway (*Id.* at ¶ 6).   Officer Danley approached Wilson and directed him to put his hands behind his back, and Wilson complied. (*Id.* at ¶¶ 9-10).   A second black male, later identified as Carlos Burroughs, suddenly appeared on the scene and was also apprehended by Officer Danley without incident. (*Id.* at ¶ 11).

At the time of his apprehension, Wilson was limp, coughing, and foaming at the mouth, and he complained of having trouble breathing. (Doc. 128,  Danley Depo. at p. 37:17-23).   Wilson could not stand, and he became less and less responsive. (Doc. 156-2 at ¶¶ 35-46, 73-75, 88, 101, 110).   Less than two minutes after arriving on the scene and less than five minutes after Officer Danley's first encounter with

Wilson, Officer Smith requested for a medical unit to come to the scene to assess Wilson. (Doc. 156-1 at ¶¶ 19, 20). Two Douglas County Fire Department emergency medical units were then dispatched to the responding officers' location. (*Id.* at ¶ 20). However, Brian Porterfield, one of the paramedics who was responding to location, cancelled the second emergency medical unit while in route to the location because he believed that "no further resources were thought to be necessary to address this incident." (*Id.* at ¶ 21; Doc. 130, Porterfield Depo. at p. 65:4-9). While the officers were waiting for the medical responders to arrive, the officers carried Wilson and placed him in the backseat of a patrol vehicle. (Doc. 156-1 at ¶ 22).

When Porterfield and EMT Sean Flack arrived on the scene, the officers told them that Wilson was faking. (Doc. 156-2 at ¶¶ 113-116). The officers did not inform the paramedics that that they had found Wilson lying face down on a driveway, that he was limp and could not stand, that he had to be carried to the patrol car, and that he had become less and less responsive over a short period of time. (*Id.* at ¶¶ 118-128). Porterfield attempted to communicate with Wilson regarding his prior complaint to the officers that he could not breathe, but Wilson did not respond to questioning. (Doc. 157-2 at ¶ 5.) Further, Porterfield was unable to determine whether Wilson was conscious or aware of his surroundings at that time. (Doc. 130, Porterfield Depo. at p. 18:19-25 through p. 19:1-6, and p. 20:21-25). Porterfield

examined Wilson by measuring his pulse and oxygenation levels and by feeling his face and forehead. (*Id*. at p. 89:7-12).  The officers appeared to have rushed Flack and Porterfield's medical assessment of Wilson. (Doc. 156-2 at ¶¶ 129, 140).  Based on the limited medical assessment and the minimal information provided by the officers, Flack and Porterfield determined that Wilson was likely not suffering from any respiratory emergency, and they deferred to the officers to make the ultimate decision as to whether to transport Wilson to the hospital. (Doc. 129, Flack Depo. at pp. 89-90; Doc. 156-2 at ¶¶ 137-139, 141-143, 145).

Upon arrival at the jail, Officer Danley and Officer Smith first took the other burglary suspect, Burroughs, into the police department and placed him in a holding cell. (Doc. 156-1 at ¶ 36).  The officers then returned to the patrol car, physically removed Wilson, and carried him into the building. (Doc. 157-2 at ¶ 12.)  Upon placing Wilson in a holding cell, Officers Danley and Smith observed that Wilson was no longer breathing and had no pulse. (Doc. 156-1 at ¶ 37; Doc. 157-2 at ¶13).  Medical assistance was summoned, and Officer Smith began CPR. (*Id.*)  Unfortunately, despite the efforts of the officers and medical personnel, Wilson could not be resuscitated. (*Id.* at ¶ 38.)  An autopsy later determined that the cause of death was a condition referred to as exercise collapse associated with sickle cell trait ("ECAST"), which is a rare medical condition that is difficult to diagnose and

4

is usually discovered post-mortem.  Consequently, ECAST has been difficult to study in the medical field. ([*Id.* at ¶ 39]; [Doc. 157-2 at ¶ 17].)

Based on these events, Wilson's parents and estate brought suit against Officers Danley and Smith, paramedics Flack and Porterfield, and the City of Douglasville, seeking compensatory and punitive damages based on the Wilson's death.  Plaintiffs assert that Defendants Danley, Smith, Flack, and Porterfield were negligent in addressing Wilson's medical condition and that they violated Wilson's Fourteenth Amendment constitutional rights by acting with deliberate indifference to his serious medical need.  Defendants now move for summary judgment on all counts, both on the merits and on the basis of qualified and official immunity.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the absence of a genuine issue of material fact, looking at the evidence in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the…court of the basis for its motion,

and identifying those portions of [the record] …which it believes demonstrate the absence of a genuine issue of material fact").  After a motion for summary judgment has been properly supported, the nonmovant must present affirmative evidence "from which a jury might return a verdict in his favor" and that demonstrates the presence of "a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1991) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

## III.   DISCUSSION

As a threshold matter, the Court will address the merits of Defendants Porterfield and Flack's motion to exclude the opinion testimony of Plaintiff's expert, Dr. Kris Sperry [Doc. 120], and Defendants City of Douglasville, Officer Danley, and Officer Smith's motion to strike (or exclude) the supplemental expert affidavit of Roger Clark [Doc. 163], as the issues raised in these motions have a direct bearing on the Court's analysis of the motions for summary judgment.

### A.  Admissibility of Dr. Kris Sperry's Opinion Testimony

In an effort to provide a causal link between the alleged negligence of the paramedics (Porterfield and Flack) and the death of Wilson, Plaintiffs rely on the expert opinion of Dr. Kris Sperry.  Dr. Sperry opines as follows: (1) the cause of Wilson's death resulted from exercise collapse associated with sickle cell trait or "ECAST" (Doc. 126, Sperry Depo. at p. 139:4-10); (2) the initial treatment for a suspected ECAST event is primarily support through the administration of oxygen and the provision of fluids to prevent further damage and possible death (*Id*. at p. 152:8-14); (3) had Wilson been promptly supplied with oxygen and fluids at the site of his arrest by these defendants, it is more probable than not that he would have survived (*Id*. at p. 160:5-12); and (4) had Wilson been transported to a hospital, it is more probable than not that he would have survived (*Id*. at pp. 180:10-25 through 181:1-12).  However, Dr. Sperry is a forensic pathologist, and he concedes that he is not qualified to opine about the clinical diagnosis and treatment of an ECAST event. (*Id*. at pp. 32:9-10, 25:10-16, 143:10-16).

For an expert opinion to be admissible under Fed. R. Civ. P. 702, the expert must be "competent and qualified by knowledge, skill, experience, training, or education to render the opinion." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006); s*ee also Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp.  2d 1347, 1351

(N.D. Ga. 2001) ("The expert must be qualified in his field of expertise.").  A witness who lacks sufficient relevant qualifications on the relevant issue must be excluded as insufficiently qualified. *See Trumps v. Toastmaster, Inc.,* 969 F. Supp. 247, 252 (S.D.N.Y. 1997) (mechanical engineer not competent to provide opinions on issue involving electrical engineering); *Everett v. Georgia-Pacific Corp.*, 949 F. Supp. 856, 857-858 (S.D. Ga. 1996) (physician not competent to testify on cause of plaintiff's medical condition because he practiced in area of family medicine and surgery, and possessed no specialized knowledge or training in field of toxicology; an expert must, at a minimum, possess some specialized knowledge about field in which he is to testify).  Furthermore, "[a] witness may not qualify—merely through reading and preparation—as an expert in 'an entirely different field or discipline.' Instead, an expert must 'stay within the reasonable confines of his subject area.' Thus, many courts have excluded testimony when they determine that the witness is testifying to an area outside of—but related to—his expertise." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (citations omitted).

Here, the record shows that Dr. Sperry is a forensic pathologist, which is a subspecialty of pathology limited to the investigation of undetermined or questionable deaths. (Doc. 126, Sperry Depo. at p. 33:7-17).  The practice of forensic pathology can also include the interpretation of the cause of injuries in living and

deceased individuals. (*Id.* at p. 90:18-24).  Dr. Sperry does not treat patients, nor is he involved in recommending medical treatment or preventative procedures. (*Id.* at p. 25:19-22.)  Notably, Dr. Sperry testified at his deposition that ECAST events are usually diagnosed post-mortem, and he acknowledged that medical studies indicate that there are no evidence-based treatment guidelines or specific protocols for managing an ECAST event as it is occurring. (*Id*. at pp. 142:1-4, 166-68, 186:14-25). He further acknowledges that there are no evidence-based peer review studies that would support the proposition that providing prompt oxygen and fluids would improve the survivability of an ECAST event. (Id. at p. 171:9-25).

In sum, nothing in Dr. Sperry's training, experience, or education makes him qualified to opine as to the proper emergency treatment for and the potential survivability of an ECAST event, and his opinions have no reliable basis and are purely speculative.  Accordingly, Defendants Porterfield and Flack's motion to exclude the testimony of Plaintiff's expert Dr. Kris Sperry [Doc. 120] is **GRANTED**.

### B.  Supplemental Expert Affidavit of Roger Clark

Defendants City of Douglasville, Officer Danley, and Officer Smith seek to exclude the consideration of the supplemental expert affidavit of Roger Clark, arguing that the affidavit is untimely and that Clark is not qualified to render an

expert opinion regarding the officers' actions in response to a detainee who is experiencing an ECAST event, specifically.

In regard to the timeliness issue, the Court finds that the statements made in Clark's supplemental affidavit were merely expounding on his opinions that were disclosed in his earlier expert report and deposition testimony. (*See* Doc. 167 at pp. 3-8; Doc. 154-8 (supplemental affidavit/earlier expert report); Doc. 148-1 (Depo. of Roger Clark)).  As the Defendants were aware of that testimony based upon Clark's report and/or his deposition testimony, the Court will not exclude the declaration on the basis of untimeliness. *See Miele v. Certain Underwriters at Lloyd's of London*, 559 F. App'x 858, 862 (11th Cir. 2014) (finding the district court did not abuse its discretion in refusing to exclude an expert's declaration which contained the same conclusions as his expert report); *Shire Dev. LLC v. Watson Pharm., Inc.*, 932 F. Supp. 2d 1349, 1357–58 (S.D. Fla. 2013) (refusing to strike a supplemental expert declaration because "the opinions in the relevant portions of the declarations were already substantially covered by the respective experts[,]" and "allowing the disputed declarations will not prejudice Defendants, as the same or similar topics were covered by other experts, and Defendants have had several opportunities to question the experts on these topics and rebut any opinions with their own experts").

In regard to the issue of whether Clark is qualified to render an opinion as to the officers' actions in response to Wilson's specific medical emergency (ECAST), the Court finds that Defendants' argument is without merit.  Police officers do not need to know the specific diagnosis of the person who is experiencing a medical emergency to be held liable under § 1983. The standard is only whether a *lay person* would recognize that the arrestee was in the midst of a medical emergency. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994); *see also  Taylor v. Hughes*, 920 F.3d 729, 733-734 (11th Cir. 2019) (holding that "[a] serious medical need is…one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and that a government official "does not need to know a detainee's specific medical condition to be deliberately indifferent to his or her serious medical need").  Given that there is no requirement that a police officer know exactly what the underlying medical issue is when responding to a medical emergency, it is not controlling whether Clark had any prior experience with arrestees experiencing an ECAST event, specifically.   Furthermore, the record shows that, by virtue of his training, education, and experience as a law enforcement officer, Clark is qualified to offer an expert opinion on the proper police response to a medical emergency. (See Doc. 154-8, Ex. B).

For the above reasons, Defendants City of Douglasville, Officer Danley, and Officer Smith's motion to strike (exclude) the supplemental expert affidavit of Roger Clark [Doc. 163] is **DENIED**.

The remainder of the Court's analysis shall focus on the Defendants' respective motions for summary judgment.

**C. State Law Claims (Negligence, Punitive Damages, and Expenses of Litigation under O.C.G.A. § 13-6-11)**

In Counts I and II of the First Amended Complaint, Plaintiffs assert that the City of Douglasville is vicariously liable for the negligence of Officer Danley, Officer Smith, paramedic Porterfield, and EMT Flack based on their acts or omissions in addressing Wilson's ECAST event.  In Count IV, Plaintiffs assert that paramedic Porterfield and EMT Flack breached their ministerial duties by failing to follow policies and procedures in addressing Wilson's ECAST event.  Based on these tort claims, Plaintiffs seek to recover expenses of litigation under O.C.G.A. § 13-6-11 (Count IV) and punitive damages (Count V).  Plaintiffs' claims cannot survive summary judgment.

"The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Boller v. Robert W. Woodruff Arts Ctr., Inc.,*

311 Ga. App. 693, 695 (2011) (citation and punctuation omitted; emphasis supplied). Plaintiffs have failed satisfy the required element of causation.

"To state a cause of action for negligence in Georgia…there must be…a legally attributable causal connection between the conduct and the resulting injury[.]" *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1999). "Georgia law is well-settled that 'the defendant's conduct is not a cause of the event, if the event would have occurred without it.'" *Mann v. Taser Int'l., Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) (quoting *General Motors Corp. v. Davis*, 141 Ga. App. 495 (1977)). In medical cases, "negligence alone is insufficient to sustain recovery." *Anthony v. Chambless*, 231 Ga. App. 657, 659 (1998). Therefore, "[i]t must be proven that the injury complained of proximately resulted from [the negligence acts]." *Id.* Additionally, "there can be no recovery for medical negligence where there is no showing to any reasonable degree of certainty that the injury could have been avoided" but for the negligence. *Id.*; *see also Zwiren v. Thompson*, 276 Ga. 498, 503 (2003) (in medical negligence cases, expert opinion testimony as to causation must be based on "reasonable medical probability or reasonable medical certainty").

Although there is evidence in the record to suggest that Defendants Danley, Smith, Porterfield, and Flack may have breached their duties of care in addressing Wilson's ECAST event, there is no admissible evidence in this case that any of the

purported acts or omissions on the part of these Defendants proximately caused Wilson any pain and suffering, or his subsequent death, to any degree of reasonable medical probability or certainty. (*See* Section III A of this Order).  On the other hand, the Defendants' expert, Dr. Carlton Dampier, testified at his deposition that Wilson would likely have died based on his condition when Officer Danley first encountered him, independent of when medical personnel were summoned or when they arrived, and that there were no known treatments that could have been undertaken avoid his death. (Doc. 122, Dampier Depo. at pp. 110-118).  Plaintiffs' negligence claims are based on the alleged failure to assess and treat Wilson's medical condition, and Georgia law is clear that expert opinion testimony regarding the prospect of a patient's survival with appropriate treatment must be based on "more than a mere chance or speculation." *Anthony,* 231 Ga. App. at  659 (2017).

As Plaintiffs have failed to satisfy the causation element of their negligence allegations against Officer Danley, Officer Smith, paramedic Porterfield, and EMT Flack, there exists no underlying liability for negligence on which to impose vicarious liability against the City of Douglasville.  Furthermore, as Plaintiffs' state law tort claims fail, there is no basis on which to recover punitive damages or expenses of litigation.  Accordingly, Defendants Porterfield and Flack's motion for summary judgment [Doc. 119] and Defendants City of Douglasville, Officer Danley,

14

and Officer Smith's motion for summary judgment [Doc. 132] are **GRANTED** as to the state law claims in Counts I, II, IV, and V of the First Amended Complaint.

## D.  Constitutional Claim

In Count III of the First Amended Complaint, Plaintiffs assert that Defendants Danley, Smith, Porterfield, and Flack violated Wilson's rights under the Fourth and Fourteenth Amendments by acting with deliberate indifference to his medical needs. The Defendants move for summary judgment on the basis of qualified immunity and on the merits of the claim.

### 1.  Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In deciding whether qualified immunity is appropriate, courts conduct a two-step inquiry and ask: (1) whether the government official engaged in conduct that violated a statutory or constitutional right, and (2) whether that constitutional right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (receded from by *Pearson v. Callahan*, 555 U.S. 223 (2009)). *See also Andujar v. Rodriguez*, 486 F.3d 1199,

15

1202-1203 (11th Cir. 2007); *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019). It is well established that a person arrested by the police has a right to receive emergency medical treatment if needed and, therefore, the police officers' deliberate indifference to the serious medical needs of the arrestee is a constitutional violation. *See e.g. Taylor*, 932 F.3d at 732-733 (11th Cir. 2019). However, it is unclear as to whether emergency medical responders, who play no part in the arrest or detention, violate that person's constitutional rights merely by performing a negligent medical assessment.

In this case, the burden of showing that the Defendants are not entitled to qualified immunity is essentially the same as the burden that Plaintiffs must meet to survive summary judgment on the merits of their constitutional claim; Plaintiffs must show that: (1) Wilson had a serious medical need, (2) Defendants acted with deliberate indifference to that need, and (3) Defendants' indifference caused the violation of Wilson's constitutional rights. *Taylor*, 932 F.3d at 733 (11th Cir. 2019); *Mann*, 588 F.3d at 1306-1307 (11th Cir. 2009).

a. Serious Medical Need

"A serious medical need is…one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Taylor*, 932 F.3d at 733 (11th Cir. 2019); *Mann*, 588 F.3d at 1307).

(i)  In this case, a jury could find that Wilson's medical need was so obvious to Officer Danley and Officer Smith that even a lay person would easily recognize the necessity for a doctor's attention.  When Officer Danley encountered Wilson, Wilson was lying face down in a driveway.  After he was apprehended, Wilson repeatedly complained to Officers Danley and Smith of an inability to breathe.  He could not stand or sit on his own and had to be carried by Officer Danley and Officer Smith to the patrol car prior to the arrival of the emergency medical personnel. Additionally, there is also evidence that Wilson was foaming at the mouth.  While Wilson was initially able to verbally respond to Officers Danley and Smith, he eventually stopped communicating with the officers, and was ultimately non-responsive with emergency medical personnel.  Although Wilson's specific condition or diagnosis was not obvious to Officer Danley and Officer Smith, a reasonable jury could find that his worsening medical condition indicated a serious medical need. *See, e.g.*, *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (holding that a jury could find that the plaintiff was unconscious and having trouble breathing, which would constitute a serious medical need).

(ii)  As will be discussed more fully below, the evidence shows that paramedic Porterfield and EMT Flack were not fully aware of the seriousness of Wilson's

medical need, due in part to the lack of background information provided by the police officers.

b. Deliberate Indifference

To show that Defendants acted with deliberate indifference to Wilson's serious medical needs, the Plaintiffs must demonstrate that: (1) the Defendants had subjective knowledge of a risk of serious harm, (2) the Defendants consciously disregarded that risk; and (3) the Defendants' conduct amounted to more than gross negligence.[1] *Andujar*, 486 F.3d at 1203-1204 (11th Cir. 2007).

Subjective knowledge of a risk of serious harm requires that the Defendants actually knew of the risk. *Kruse v. Williams*, 592 Fed. Appx. 848, 856 (11th Cir. 2014) "[P]roof that the defendant[s] should have perceived the risk, but did not, is insufficient." *Id.* (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999)). Rather, "[an] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

---

[1]   The Eleventh Circuit has applied varying standards regarding the third prong of this inquiry. At times, this Circuit requires a plaintiff to demonstrate that a defendant's conduct amounted to more than *gross* negligence. *See Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010); *Andujar*, 486 F.3d at 1204; Other times, this Circuit has stated only that a defendant's conduct must amount to more than *mere* negligence. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (explaining that *Estelle* and *Farmer* require disregard of a risk by more than mere negligence); *Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016) (disagreeing with the requirement of gross negligence espoused in *Townsend* as inconsistent with *Farmer* and relevant Eleventh Circuit precedent).

inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1999). However, whether a particular defendant has subjective knowledge of the risk of serious harm can be demonstrated through circumstantial evidence. *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007). Further, "a factfinder may conclude that a[n]…official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842 (1994)).

(i) Looking at the evidence in the light most favorable to the Plaintiffs, Officer Danley and Officer Smith had subjective knowledge of the risk of harm because they knew that Wilson had collapsed while attempting to flee, that he complained of an inability to breathe, that he was unable to walk or sit up by himself and had to be carried to the patrol car by the officers, and that his condition had deteriorated over time. A reasonable jury could conclude that the officers consciously disregarded the known risk of harm by choosing to omit key information from their communications with emergency medical personnel that could have been useful in their medical assessment. Specifically, the officers did not inform Porterfield or Flack that Wilson had collapsed after attempting to flee and was found face down in a driveway, that he was unable to walk or sit up by himself and had to be carried by the officers to the patrol car, and that his condition had deteriorated over time. A jury could also conclude that the officers consciously disregarded the known risk of harm when they

interfered with Porterfield and Flack's medical assessment of Wilson by rushing their assessment and insisting that Wilson was faking his medical emergency. Additionally, a jury could conclude that the officers consciously disregarded the known risk of harm by ultimately making the decision not to have Wilson transported to the hospital despite emergency medical personnel's offer to do so.   A person acts with conscious disregard of a known risk of serious harm by failing to take reasonable measures to abate that risk. *Farmer*, 511 U.S. at 847.  Based on these facts, Plaintiffs have presented sufficient evidence in this case to demonstrate that the Officer Danley and Officer Smith consciously disregarded the known risk of serious harm to Wilson.

Finally, a jury could find that the Officer Danley and Officer Smith's actions amounted to more than gross negligence, so it makes no difference if the lesser standard of "more than mere negligence" standard applies.  When determining whether conduct amounts to more than gross negligence, courts have considered the seriousness of the medical need, whether the delay in medical treatment worsened the medical condition, and the reason for the delay. *Goebert*, 510 F.3d at 1327. Viewing the evidence in the light most favorable to the Plaintiffs, the officers were aware that Wilson's medical condition was serious and worsened over time. Furthermore, the officers had no legitimate reason to delay treatment or to inhibit

20

Wilson's transport to the emergency room.  Officers Danley and Officer Smith's purported belief that Wilson was faking his medical emergency did not justify their interference with the medical assessment of Wilson. *See id.* at 1328 ("The problem is that [the defendant] didn't believe Goebert, and the reason he did not believe her smacks of deliberate indifference."). Furthermore, the police officers rebuffed emergency medical personnel's offer to transport Wilson to the hospital for further evaluation.  Thus, a reasonable jury could find that Officer Danley and Officer Smith's conduct amounted to more than gross negligence and that they acted with deliberate indifference to Wilson's serious medical need.

(ii)   Paramedic Flack and EMT Porterfield, however, lacked sufficient knowledge of the risk.  When Porterfield and Flack arrived on the scene, they were advised by the officers that Wilson had complained of an inability to breathe but was faking it. Notably, Porterfield and Flack were not advised of the relevant circumstances surrounding his apprehension.  Specifically, they were not informed that Wilson had collapsed while attempting to flee, that he was unable to walk or sit up by himself and had to be carried to the patrol car by the officers, and that his condition had deteriorated over time.  This information, had it been provided to Porterfield and Flack, could have affected their assessment of Wilson's condition.

Furthermore, there is insufficient evidence to show that Flack and Porterfield consciously disregarded the risk.  Although they noticed that Wilson was not responding to their questions, they were unable to determine whether Wilson was simply ignoring them or was, instead, unaware of his surroundings.  Furthermore, they examined Wilson by measuring his pulse and oxygenation levels, and they determined from the results of that examination that Wilson was likely not suffering from any respiratory emergency.  Under these circumstances, the issue of whether Porterfield and Flack's medical assessment was deficient is a matter of negligence, but it does not rise to the level of deliberate indifference.  In other words, it makes no difference if the "more than mere negligence" or the "more than gross negligence" standard applies to the deliberate indifference claim against Porterfield and Flack, because the evidence against them is insufficient to meet either standard.

For the above reasons, the alleged acts or omissions on the part of Porterfield and Flack do not rise to the level of a constitutional violation and, therefore, Porterfield and Flack are entitled to qualified immunity.  Accordingly, Defendants Porterfield and Flack's motion for summary judgment is **GRANTED** as to Count III.

The remainder of the Court's summary judgment analysis of Count III pertains to the claim against Officer Danley and Officer Smith.

c. <u>Indifference Caused a Violation of Constitutional Rights</u>.

In a deliberate indifference claim, there must be a causal connection between the conduct of the defendants and the constitutional violation itself. *Goebert*, 510 F.3d at 1327; *see also Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015) ("[Plaintiff] does not necessarily need to show that the delay in medical care exacerbated his condition because the delay in care is, itself, a…constitutional violation."). In this case, Plaintiffs have presented evidence to show that the Officer Danley and Officer Smith's deliberate indifference to Wilson's serious medical needs caused an interference or delay in receiving medical care, which is violation of his constitutional rights.

d. <u>Applicable Law Clearly Established</u>

To defeat qualified immunity, Plaintiffs must additionally show that the law was clearly established at the time of the constitutional violation. "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of*

*West Palm Beach, Florida*, 561 F.3d 1288, 1291-1292 (11th Cir. 2009) (citations omitted).

At the time of Wilson's detainment, Eleventh Circuit case law clearly established that knowledge of a detainee's medical need and denial of, interference with, or delay in providing care constituted deliberate indifference, such that Officer Danley and Officer Smith would have known whether their actions violated Wilson's constitutional rights. *See, e.g.*, *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir. 1991) (holding that the law was clearly established that the refusal to provide or a delay in providing a necessary treatment would constitute deliberate indifference and violate a detainee's constitutional rights); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) ("[I]t was clearly established that a jail official violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee") (overruled on other grounds by *LeFrere v. Quezada*, 588 F.3d 1317 (11th Cir. 2009)).

For the above reasons, Plaintiffs have established that Defendants Danley and Smith are not entitled to qualified immunity.

2.  Furthermore, based on the evidence discussed above, Officer Danley and Officer Smith are not entitled summary judgment on the merits of Count III. However, because Plaintiffs cannot establish that Officer Danley and Officer

24

Smith's conduct was the proximate cause of Wilson's pain and suffering or subsequent death resulting from his ECAST event (*see* Section III A and C of this Order), Plaintiffs are precluded from recovering actual damages for those injuries. Nevertheless, Plaintiffs are still entitled to recover nominal damages for the constitutional violation itself, even if he cannot establish actual damages. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015). (holding that nominal damages are available to a prisoner in a suit based on deliberate indifference to the conditions of his detainment); *Slicker v. Jackson*, 215 F.3d 1225, 1231-1232 (11th Cir. 2000) ("[A] § 1983 plaintiff alleging excessive use of force is entitled to nominal damages even if he fails to present evidence of a compensable injury.").

Accordingly, Defendants Officer Danley and Officer Smith's motion for summary judgment [Doc. 132] is **DENIED** as to Count III of the First Amended Complaint.

## IV.  CONCLUSION

After consideration of the Defendants' respective motions, arguments of counsel, and all appropriate matters of record, and for the reasons set forth above, Defendants Porterfield and Flack's Motion to Exclude Opinions of Plaintiffs' Expert Dr. Kris Sperry [Doc. 120] is **GRANTED**, Defendants City of Douglasville, Officer

Danley, and Officer Smith's Motion to Strike Supplemental Expert Affidavit of Roger Clark [Doc. 163] is **DENIED**, Defendants Porterfield and Flack's Motion for Summary Judgment [Doc. 119] is **GRANTED**, and Defendants' City of Douglasville, Officer Danley, and Officer Smith's Motion for Summary Judgment [Doc. 132] is **GRANTED IN PART** as to Counts I, II, IV, and V and **DENIED IN PART** as to Count III.

IT IS SO ORDERED, this 26th day of September, 2019.

_____
WILLIAM M. RAY, II
United States District Judge
Northern District of Georgia